# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No.: 2:16-cr-00324-LRH-GWF |
| vs. | **SUPPLEMENTAL FINDINGS & RECOMMENDATIONS** |
| | **Re: Motion to Suppress (ECF No. 36)** |
| JESSIE MENDOZA, | |
| Defendant. | |

This matter is before the Court on Defendant Jessie Mendoza's Motion to Suppress (ECF No. 36), filed on February 17, 2017. The Government filed its Response (ECF No. 41) on March 3, 2017, and Defendant filed his Reply (ECF No. 42) on March 10, 2017. On May 10, 2017, the Court entered its Findings & Recommendations (ECF No. 66) which granted Defendant an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978). The evidentiary hearing was conducted on May 25, 2017. The Court hereby enters its supplemental findings and recommendation based on the evidence presented during that hearing.

## BACKGROUND

The Court incorporates its Findings & Recommendations (ECF No. 66) as if the same were set forth herein in their entirety.

In his October 21, 2016 affidavit in support of the search warrant to obtain a buccal swab from Defendant Mendoza, Detective Justin Beveridge stated:

> In the 9/12/16 EZ Pawn robbery, the person wearing the hockey mask appears to be a Hispanic male with a shaved head and appears to be heavy set. Photographs obtained from Facebook and Nevada DMV of

> Jessie Mendoza match the hair and body style of the gunman with the hockey mask.

*Motion to Suppress* (ECF No. 36), *Exhibit B, Affidavit*, pg. 565.

In his October 22, 2016 Application for Telephonic Search Warrant to search Defendant's residence, Detective Beveridge stated as follows:

> During [the September 12, 2016 EZ Pawn robbery] four suspects were seen on video surveillance entering the EZ Pawn. Three suspects went directly to the jewelry display cases and began smashing them out taking various items of jewelry and watches. The fourth suspect seen on video as [sic] a Hispanic male adult, weighing over 200 pounds, wearing a white Jason style hockey mask, was armed with a black handgun and was standing guard at the EZ Pawn front door. After the robbery was over the suspects entered a Toyota van and fled to Mariana's Supermarket parking lot. Suspect four was seen on the Mariana's parking lot video surveillance walking over to the trash dumpster and throwing all the clothing items worn by the robbery suspects along with the hockey mask in the dumptser.

*Motion to Suppress* (ECF No. 36), *Exhibit A, Telephonic Affidavit*, pg. 557.

Defendant argues that these statements contain material misrepresentations regarding the description of the robbery suspect wearing the hockey mask. Defendant also argues that Detective Beveridge omitted material information that contradicted his identification of the robbery suspect as Hispanic.

**1. Witness Statements, Police Report and Video Surveillance Evidence.**

Defendant introduced copies of voluntary written statements provided by four eyewitnesses to the robbery. One of the statements is written in Spanish and identifies the robbers as "personas morenas." *Defendant's Exhibit D.* A second eyewitness stated that "[f]our black males came in and started smashing out jewelry cases. One guy was at the door telling us not to move. He was wearing a hockey mask with gray/black shirt. Bald head." *Defendant's Exhibit E.* A third eyewitness stated: "4 black males came out the EZ Pawn and they jumped over the raill [sic][.]" *Defendant's Exhibit F*. A fourth witness stated: "3 individuals came into the store wearing face mask one white the others black with hoodies." *Defendant's Exhibit G.*

The police report prepared by one of the officers who responded to the September 12, 2016 robbery describes the four robbers as follows:

(1)  Black or African American Male, Ethnicity: Not Hispanic or Latino, Age: 20-30, Build: Heavy, Height: 5'6";

(2)  Black or African American Male, Ethnicity: Not Hispanic or Latino, Age: 20-30, Build: Medium, Height: 6'0";

(3)  Black or African American Male, Ethnicity: Not Hispanic or Latino, Age: 20-30, Build: Thin, Height: 6'0"; and

(4)  Black or African American Male, Ethnicity: Not Hispanic or Latino, Age: 20-30, Build: Thin, Height: 6'0".

*Defendant's Exhibit B*, pgs 343–344.

The narrative section of the police report further stated: "On 9/12/16 at approximately 1939 hours, 4 Black Males entered the EZ Pawn at 3010 S. Valley View wearing masks and gloves. 1 male, wearing a gray sweatshirt, black pants and a "Jason" style hockey mask. . . . The first male with the hockey mask stood by the front door and acted as a lookout and had a handgun in his hand per video surveillance." *Id.* at pg. 346.

The surveillance videos from the EZ Pawn robbery and the Mariana's Superstore parking lot were played during the May 25th evidentiary hearing. The Court was also provided with a DVD containing both videos which it reviewed in preparing these findings. *Government's Exhibits 1 and 2*. The EZ Pawn surveillance video depicts the front door of the store from the inside. The total duration of the video is one minute. Twenty five seconds into the video (19:36:57-8 hours), the robbers enter the store. The first three robbers were wearing hooded sweatshirts which covered their heads and make it difficult to see their faces. These three individuals move swiftly into the store and out of camera view. It is difficult, if not impossible, to identify their races or ethnicity in the video, but nothing therein is inconsistent with their being identified as black or African American males. The fourth robber came fully inside the front door at approximately forty seconds into the video (19:37:12 hours). The fourth robber was wearing dark or black pants, and a grey sweat shirt. He was also wearing gloves. This individual is correctly described as having a "heavy" or "heavy set" build. The fourth robber was not wearing a hood over his head. He appears to be bald or has a shaved head. He was wearing the white hockey mask which covered his face. The only visible part of the robber's skin is the top and rear of his head and his neck. The color of the suspect's skin, as depicted on the surveillance video, could be consistent with that of an Hispanic individual or

possibly an African American male with a light complexion.

The surveillance video from the Mariana's Superstore parking lot is 4 minutes, 39 seconds in duration. The surveillance camera is above the parking lot and looks down on it. The public street is at the top of the video image. The trash dumpster is in a three-sided block wall enclosure with a double gate on the front. The dumpster is on the left side of the video image. Marked parking spaces are on the right side of the image. The camera appears to be approximately 15-20 yards away from the dumpster. The video was taken at night time and the parking lot appears to be well lit, particularly in foreground where the dumpster is located. The visual quality of the video recording is clear and in focus.

The suspect vehicle is seen entering the parking lot from the public street approximately 20 seconds into the recording. It proceeds to a parking space on the right side of the video image. At approximately 57 seconds into the video, an individual leaves the suspect vehicle and walks quickly to the dumpster where he throws what appear to be articles of clothing over the gate into the dumpster. This individual has a medium or heavy build, a bald or shaved head, and is wearing white shorts and a dark or black shirt. After throwing the articles into the dumpster, the individual walks toward the street, i.e., the top of the video image. He then comes back to the suspect vehicle which he enters at 1 minute, fifty-seven seconds into the video. At two minutes, twenty-two seconds into the video, the individual exits the suspect vehicle and moves out of camera view toward the right side. At three minutes, twenty four seconds into the video, the individual again comes into view in the lower right portion of the video image. He walks in front of a dark colored pick-up truck which also comes into view from the left side of the video. The individual walks to the suspect vehicle where he meets other individuals who appear to be black or African American males. In the meantime, the dark colored pick-up truck circles around the parking lot and stops in front of the suspect vehicle. Four individuals, including the individual in the dark shirt and white shorts, come from the suspect vehicle, carrying items, and enter the pick-up truck. A few seconds later, another individual comes from the vicinity of the suspect vehicle and enters the dark pick-up truck which then drives out of view. Based on the lighting, the individual shown in the Mariana's video could be Causasian or Hispanic. He does not appear to be black or African American.

**2. Detective Beveridge's Testimony.**

Detective Beveridge testified that he was not working on September 12, 2016 when the robbery occurred. He was informed of the robbery on Wednesday, which would have been September 14th and was assigned to lead the investigation of the EZ Pawn robbery series. He was provided with the surveillance video that had been collected by other detectives who had responded to the September 12th robbery. He was also provided with the items that were recovered from the dumpster–clothing and the hockey mask. Detective Beveridge prepared or signed a report dated September 16, 2016 which summarized the EZ Pawn robberies that had occurred since March 2016. *Defendant's Exhibit A*. Although the report is dated September 16th, it summarizes events that occurred up through the arrest of Defendant Mendoza. *Id.* at pg. 699. The September 12, 2016 robbery was summarized in that report and listed the descriptions of the suspects. It described the robber standing by the door as follows: "Susp #4: unk race, white "Jason style" hockey mask with black straps, grey long sleeve sweatshirt, head shaved close, heavy set, dark pants, dark shoes, armed with a black semi auto handgun." *Id.* at pg. 693. The report also stated that "one suspect dumped clothes and a hockey mask in store trash dumpster. The clothes and mask look to be the same as the mask and clothes worn by the armed lookout." *Id.* at pg. 694.

Detective Beveridge testified that the robbery suspect guarding the door in the EZ Pawn surveillance video appeared to weigh in the range of 190 pounds and had a medium, stocky build. The suspect appeared to be white (Caucasian) or Hispanic. He based this determination on the tone of the suspect's skin as shown in the video. Detective Beveridge was also provided with the surveillance video from the Mariana's Superstore parking lot. He testified the individual shown in the Mariana's video was of medium build and appeared to be a white or Hispanic male with a bald head. This individual's appearance was similar to the suspect shown in the EZ Pawn video, i.e. the bald head and white or Hispanic race or ethnicity.

Detective Beveridge testified that in addition to the witnesses who provided the written statements discussed above, two EZ Pawn employees were interviewed by the police. One employee identified the robber guarding the door as a black male. The EZ Pawn store manager, however, identified some of the robbers as white. Detective Beveridge did not state which robbers the store

5

1 manager identified as white. Detective Beveridge testified that he identified the robber guarding the
2 door as white or Hispanic when he first viewed the EZ Pawn surveillance video. He stated that while
3 he takes eyewitness statements into account, if the statements are inconsistent with the video
4 surveillance, then he believes the witnesses are wrong. He had no doubt that the robber shown on
5 the EZ Pawn surveillance video was white or Hispanic. He based this, in part, on the fact that one of
6 the other robbers seen on the video was clearly black.

## DISCUSSION

8 To prevail on a *Franks* challenge, the defendant must establish two things by a
9 preponderance of the evidence; first, that the "affiant officer intentionally or recklessly made false or
10 misleading statements or omissions in support of the warrant[,]" and second, that the false or
11 misleading statement or omission was material, *i.e.*, "necessary to finding probable cause." *United*
12 *States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (quoting *United States v. Martinez-Garcia*,
13 397 F.3d 1205, 1214–15 (9th Cir. 2005)). "If both requirements are met, 'the search warrant must be
14 voided and the fruits of the search excluded. . . .'" *Id.* (quoting *Franks*, 438 U.S. at 156). If, after the
15 false information in the affidavit is set to one side, and/or the omitted information is included, there
16 remains sufficient content in the corrected affidavit to support a finding of probable cause, then the
17 motion to suppress must be denied. *Franks*, 438 U.S. at 171-72; *United States v. Jawara*, 474 F.3d
18 565, 582 (9th Cir. 2007) (quoting *United States v. Stanert,* 762 F.2d 775, 781 (9th Cir. 1985)).

19 **1. October 21, 2016 Affidavit.**

20 Detective Beveridge's October 21, 2016 affidavit for the buccal swab search warrant stated
21 that "the person wearing the hockey mask appears to be a Hispanic male . . . ." During his hearing
22 testimony, Detective Beveridge modified his description of the suspect by stating that he appeared to
23 be either Caucasian or Hispanic. His determination of the suspect's race or ethnicity was based
24 entirely on the color or tone of his skin (head and neck) as seen in the video. Based on this Court's
25 review of the same video, the robbery suspect could have been of Caucasian, Hispanic or possibly
26 African-American descent. This conclusion is based on the color/tone of the suspect's head and
27 neck. The individual might be a relatively dark toned Causasian, an Hispanic or a relatively light
28 toned African American. Individuals can be of mixed racial or ethnic origin. With respect to skin

color or tone, there are no clear demarcations between what constitutes white/Caucasian, brown/Hispanic, or black/African American. The suspect's facial features were not visible and therefore there were no other characteristics upon which to base a determination of his race or ethnicity.

Detective Beveridge omitted from the affidavit the information that two or three eyewitnesses to the robbery, as well as one of the store employees, had described all four robbery suspects as black males, and that the September 12, 2016 police report identified the four suspects as black males. A completely accurate affidavit would have included this information. It would have also stated that three of the robbers were wearing hoods and the robber by the door was wearing a hockey mask that covered his face, but not his head and neck. It would also have noted that the robbers were inside the store approximately 35 seconds. The affidavit would have stated Detective Beveridge's belief, based on his review of the EZ Pawn surveillance video, that the robber by the door appeared to be a Caucasian or Hispanic male (or if one adopts the Court's conclusion, an Hispanic or possibly a person of African-American descent).

The affidavit, as corrected, would also include the following information:

(1) During the course of the investigation, detectives identified Jason Goldsby as one of the March 12, 2016 robbery suspects and that on October 7, 2016, detectives observed Goldsby, a juvenile identified as "D.P.," and two other identified individuals commit a robbery at an EZ Pawn store in Henderson, Nevada. *Motion* (ECF No. 36), *Exhibit B*, pg. 565;

(2) D.P. told the detectives that the person wearing the hockey mask in the September 12, 2016 robbery was named "Jess." D.P. was shown a photograph of Defendant Jessie Mendoza. D.P. positively identified Mendoza as the person whom he knew as "Jess" and stated that he was the gunman wearing the hockey mask on the 9/12/16 EZ Pawn robbery. *Id.*;

(3) Photographs obtained from Facebook and Nevada DMV of Jessie Mendoza match the hair and body style of the gunman with the hockey mask. *Id.*;

(4) Call records from Jason Goldsby's cellular telephone showed that he had several telephone communications on September 12, 2016 with telephone number 702-280-6709. Detectives found through research that Defendant Mendoza had provided this number to pawn shops

as his personal contact number. *Id.*

The October 21, 2016 affidavit, as corrected, would still have provided probable cause for the issuance of the buccal swab search warrant. The issuing judge or magistrate would have been reasonably able to conclude that the suspect shown in the video was Caucasian or Hispanic, that he matched the "hair and body style" of Defendant Mendoza, and that the other information in the affidavit supported the identification of Defendant Mendoza as the robber guarding the front door during the September 12, 2016 robbery.

### 2. October 22, 2016 Affidavit.

Detective Beveridge's October 22, 2016 affidavit in support of the search warrant for Defendant's residence contained an additional misstatement of fact not present in the prior affidavit. The October 22, 2016 affidavit stated: "Suspect four was seen on the Mariana's parking lot video surveillance walking over to the trash dumpster and throwing all the clothing items worn by the robbery suspects along with the hockey mask in the dumpster." *Motion* (ECF No. 36), *Exhibit A*, pg. 557. Based on a comparison of the EZ Pawn and the Mariana's Superstore surveillance videos, one cannot conclusively state that the same individual is shown in both videos. As Detective Beveridge more accurately testified at the hearing, the physical appearance of the individual in the Mariana's surveillance video is similar to that of the suspect shown in the EZ Pawn video–bald or shaved head, medium or heavy build, and possibly of Causasian or Hispanic race or ethnicity. If the October 22, 2016 affidavit was corrected to state that the person shown in the Mariana's video matched the physical characteristics of the person shown in the EZ pawn video, then together with the other corrections discussed above, and the additional information set forth in the affidavit, there would still be sufficient information to support probable cause to believe that Defendant Mendoza was the robber shown in the EZ Pawn surveillance video.

### 3. The Misstatements or Omissions Were Not Intentionally or Recklessly Made.

In drafting the affidavits, Detective Beveridge concluded that the individual depicted in the EZ Pawn surveillance video was Hispanic without informing the issuing judge that eyewitnesses and other police officers had identified the suspect as black or African American. Detective Beveridge's conclusion was likely influenced by the other information that connected Defendant Mendoza, an

8

Hispanic individual, to the robbery suspect. The affidavits should have apprised the issuing judge of the contrary identification information, and the affiant's reasons for believing that those identifications were incorrect. He also overstated the case that the person shown in the Mariana's video was the robbery suspect depicted in the EZ Pawn video. Detective Beveridge's demeanor and testimony during the evidentiary hearing was credible, although he did not admit to error in drafting the affidavits. His misstatements and omissions in the affidavits were, at worst, negligent. He made conclusions which were not in themselves unreasonable, but which did contradict other information regarding the race or ethnicity of the robbery suspect. Detective Beveridge's errors, however, do not rise to the level of intentional or reckless misrepresentations or omissions.

## CONCLUSION

The Court concludes that the factual misstatements and omissions in the October 21 and 22, 2016 affidavits were not material and were not intentionally or recklessly made by the affiant. Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (ECF No. 36) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and

. . .
. . .
. . .
. . .
. . .
. . .
. . .

brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 7th day of June, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge